**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM RICHARDSON, | ) CASE NO. 1:16-cv-01583 |
| | ) |
| Plaintiff, | ) JUDGE SARA LIOI |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Comm'r of Social Security*, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Defendant. | ) |

Plaintiff, William Richardson (hereinafter "Plaintiff"), challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq*. ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I.  Procedural History

On March 20, 2012, Plaintiff filed his application for POD and DIB, alleging a disability

onset date of May 18, 2009.[1] (Transcript ("Tr.") 188-189).   The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 129-145).   Plaintiff participated in the hearing, was represented by counsel, and testified. (Tr. 41-96).   A vocational expert ("VE") and a medical expert ("ME") also participated and testified. (*Id.*)   On November 4, 2014, the ALJ found Plaintiff not disabled. (Tr. 35).   On April 25, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1).   On June 23, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1).   The parties have completed briefing in this case. (R. 12 & 13).

Plaintiff asserts the following assignments of error: (1) the ALJ erred in the evaluation of and weight assigned to the opinion of Social Security's consultative, examining physician; and (2) even if [Plaintiff] has the [RFC] for sedentary work, the ALJ's decision is not supported by substantial evidence and he erred in finding that the Plaintiff can return to past relevant work as a safety area manager. (R. 12).

## II.  Evidence

### A. Personal and Vocational Evidence

Plaintiff was born in 1950 and was 60-years-old on the alleged disability onset date as amended. (Tr. 188).   He obtained a GED while in the military and attended community college without obtaining a degree. (Tr. 45-46).   He had past relevant work as an area manager, purchasing officer, and plant manager. (Tr. 34).

---

[1]   Upon Plaintiff's December 12, 2013 motion, the alleged onset date was amended to March 28, 2011. (Tr. 18, 204).

**B. Relevant Medical Evidence**[2]

On June 11, 2012, Dorothy A. Bradford, M.D., performed a consultative examination of Plaintiff. (Tr. 348-355).   Plaintiff underwent manual muscle testing, which yielded "normal" results in all categories. (Tr. 348).   Dr. Bradford indicated the testing was reliable and that Plaintiff had "normal" ability to pick up a coin, write, hold a cup, open a jar, and button his clothing. (Tr. 348-349).   Plaintiff had decreased range of motion in his cervical spine and dorsolumbar spine. (Tr. 349-350).   Conversely, range of motion was normal bilaterally in Plaintiff's shoulders and arms. (*Id.*)   Plaintiff also had decreased range of motion in his hips and knees, but range of motion in his ankles was normal bilaterally. (Tr. 351).

Dr. Bradford recounted Plaintiff's "History of Present Illness," which included Plaintiff's statement that he has low back pain stemming from a birth defect, he has been told surgery was "too dangerous," he can stand/walk for only fifteen (15) minutes, and he never uses an ambulatory aid, and never falls. (Tr. 352).   Plaintiff also indicated he had a torn meniscus in both knees for at least ten years, but never underwent surgery.[3] (*Id.*)

Dr. Bradford noted that Plaintiff was 6'1" tall, and weighed 379 pounds with a Body mass Index ("BMI") of 50. (Tr. 353).   She noted Plaintiff was in no acute distress. (*Id.*)   With respect to gait/station, Dr. Bradford observed that Plaintiff's station and posture were normal, his

---

[2]   Because Plaintiff's first assignment of error hinges solely on the explanation given to the opinion of a consultative examiner, the Court foregoes a recitation of the medical record and instead sets forth the opinion in question.   The second and final assignment of error can also be resolved without a discussion of the medical evidence, as it centers on whether the claimant could perform his past relevant work given the environmental restrictions contained in the RFC.

[3]   *Steinhoff v. Comm'r of SSA*, 2014 WL 3854373 at *13 (N.D. Ohio Aug. 6, 2014) (finding that the medical examination's "history of present illness section is based entirely on Plaintiff's subjective claims concerning symptoms and past diagnosis"); *McCready v. Comm'r of Soc. Sec.*, 2012 WL 1060088 at *8 (E.D. Mich. Mar. 2, 2012) (rejecting the argument that a treatment note's "history of present illness" section constituted a "medical opinion" and finding that it merely constituted a narrative description of plaintiff's subjective complaints).

Romberg sign was negative, and he did not use an assistive device for walking. (Tr. 354). Movement in Plaintiff's neck was severely restricted in all directions, but he had normal stability, strength, and tone. (*Id.*)   In his upper extremities, Plaintiff had the full range of motion, normal stability, normal strength, and normal tone with no misalignment or tenderness. (Tr. 354-355).   In his right lower extremity, Plaintiff had the full range of motion, normal stability, normal strength, and normal tone with no misalignment or tenderness. (Tr. 355).   In his left lower extremity, Plaintiff had full hip abduction and rotation, normal strength, and normal tone, but reduced hip extension, hip flexion, knee extension, and knee flexion. (*Id.*)

Dr. Bradford's psychiatric review revealed that Plaintiff exhibited appropriate judgment and insight; that he was oriented to person, place, and time; that his recent and remote memory were normal; that his mood and affect were appropriate; and that his language was normal with normal rate, articulation, and spontaneity of speech. (Tr. 355).

Dr. Bradford's "Assessment/Plan" affirmed Plaintiff's statement that he can stand/walk for only fifteen (15) minutes continuously. (Tr. 355).   She noted that Plaintiff did "continuous pursed lip breathing and resting pulse ox was 96%." (*Id.*)   She opined that Plaintiff was "unable to perform active or sedentary work mainly due to his COPD and he probably has spondylolisthesis" (*Id.*)

**C. Relevant Hearing Testimony**

At the November 27, 2013 hearing, the VE characterized Plaintiff's past relevant work as follows: area manager, Dictionary of Occupational Titles ("DICOT") 183.117-010, which is skilled, *sedentary*, with an SVP of 8;[4] purchasing agent, DICOT 162.157-038, which is skilled,

---

[4]   The VE testified that this occupation provided the claimant with some transferable skills, but mostly to management positions at the light exertional level. (Tr. 79).   An additional 30 to 90 days of training or

*light*, with an SVP of 7; and plant manager, DICOT 183.117-014, which is skilled, *light*, with an SVP of 8. (Tr. 79-81) (emphasis added).

The ALJ posed the following hypothetical question to the VE:

> Now, hypothetical number one -- our hypothetical person could or can do work at the *sedentary and light exertional levels* only, with all that implies with respect to exertional and postural limitations, and see 20 CFR 404.1567 for further details about what those are, subject to the following additional limitations.
>
> Our hypothetical person could or can stand and/or walk up to and no more than a total of four hours per eight-hour work day.   Our hypothetical person would have needed and would need a sit-stand option.
>
> Our hypothetical person could and can bend, stoop, crouch, squat, kneel, and crawl up to and no more than occasionally.   Our hypothetical person could and can climb steps and ramps up to and no more than occasionally.
>
> Our hypothetical person could not and cannot climb ladders, ropes, or scaffolds at all.   Our hypothetical person could not and cannot perform work in an environment where there is exposure to fumes, chemicals, dusts, or agricultural or landscaping pollens in concentrations that exceed what would be in the environment outside of or away from the work place.
>
> Hypothetical person could not and cannot perform work in an environment where [t]here is exposure to extremes of heat, cold, humidity, or dryness.   Our hypothetical person could not and cannot work in proximity to unprotected heights, dangerous moving machinery, or other work place hazards.
>
> And our hypothetical person could not and cannot operate a motor vehicle as part of a job.

(Tr. 82-83) (emphasis added).

In response, the VE testified that such an individual could perform Plaintiff's past relevant work as an area manager position, but could not perform Plaintiff's other past relevant work as a purchasing agent or plant manager, because such jobs included standing, sitting, and lifting beyond the abilities identified in the hypothetical. (Tr. 83).

---

instruction would be required to transfer claimant's skills to other "sedentary type work." (Tr. 80).

The ALJ posed a second hypothetical, which assumed the same limitations as the first but added the following limitations: "[o]ur hypothetical person could not and cannot turn his head, to the left or right, more than 45 degrees; and could and can push and pull, with his upper extremities, up to and no more than occasionally. And that's upper extremities, plural." (Tr. 84).   The VE testified that his answer remained unchanged (*i.e.* hypothetical person could perform past relevant work as an area manager, but not the other positions). (*Id.*)

The ALJ posed a third hypothetical, which assumed the same limitations as the first but limited the individual to only sedentary work—the first hypothetical included sedentary *and* light work. (Tr. 84).   Again, the VE testified that his previous answer would remain unchanged. (*Id.*)

The ALJ posed a fourth hypothetical, which assumed the same limitations as the second hypothetical but limited the individual to only sedentary work. (Tr. 84).   The VE testified, "[s]ame answer, same job." (*Id.*)

The ALJ posed a fifth hypothetical, which assumed the same limitations as the first but added the following limitations: "[t]he hypothetical person could or can do gross manipulation and/or handling with his upper extremities up to and no more than occasionally, and could and can do fine manipulation and/or fingering with his upper extremities up to and no more than occasionally." (Tr. 84-85).   The VE testified that such a person could still perform the area manager position of claimant's past relevant work. (Tr. 85).

The ALJ posed a sixth hypothetical, which assumed the same limitations as the second hypothetical with the additional limitations contained in the fifth hypothetical. (Tr. 85).   The VE's response remained unchanged—such an individual could perform the area manager position. (*Id.*)

The ALJ posed a seventh hypothetical, which assumed the same limitations as the third hypothetical with the additional limitations contained in the fifth hypothetical. (Tr. 85).   It was

followed by an eighth hypothetical, which assumed the same limitations as the fourth hypothetical with the additional limitations contained in the fifth hypothetical. (*Id.*)  The VE responded that these additional hypotheticals had no impact and his response would not change (*i.e.* the person would still be able to perform the area manager position). (*Id.*)

Plaintiff's counsel inquired as to the impact of a restriction to simple work that required superficial contact with co-workers and supervisors.[5] (Tr. 86)  The VE testified that such limitations would eliminate all of Plaintiff's past relevant work. (*Id.*)  In response to a clarifying question from the ALJ, the VE testified that either the limitation to simple work **or** the limitation to superficial contact would eliminate all three previous jobs. (Tr. 87).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a); 404.1509.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b).  Second, the claimant must show that he suffers from a medically determinable "severe impairment" or

---

[5] Counsel suggested that these limitations stemmed from depression, anxiety, and problems with memory. (Tr. 86).

combination of impairments in order to warrant a finding of disability. 20 C.F.R. § 404.1520(c).

A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic

work activities." *Abbott*, 905 F.2d at 923.   Third, if the claimant is not performing substantial

gainful activity, has a severe impairment (or combination of impairments) that is expected to last

for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is

presumed to be disabled regardless of age, education or work experience. 20 C.F.R. § 404.1520(d).

Fourth, if the claimant's impairment(s) does not prevent him from doing his past relevant work, the

claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f).   For the fifth and final step, even if the

claimant's impairment(s) does prevent him from doing his past relevant work, if other work exists

in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.   Mr. Richardson first met the insured status requirements of the Social
     Security Act on April 1, 2004, and meets those requirements through
     December 31, 2014.

2.   Mr. Richardson has not engaged in substantial gainful activity since March
     28, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.   From March 28, 2011, the amended alleged onset date, through the date of
     this decision, Mr. Richardson has had the following severe impairments (20
     CFR 404.1520(c)): Cervicalgia, cervical spondylosis, and cervical neuritis
     … Degenerative disc disease of the thoracic and lumbar spine… Residuals
     of ischemic heart disease and myocardial infarction long before March 28,
     2011, the amended alleged onset date, including but not limited to small to
     fixed defect of the basal to mid inferolateral wall compatible with infarction
     and mild pre-infarction ischemia of the basal inferior septum… Obstructive
     ventilatory disease… Either (1) peripheral arterial disease and small
     vessel disease, or (2) vasoconstriction… Obstructive sleep apnea.
     Diabetes mellitus… Morbid obesity.

8

In addition, I find that for at least some period(s) of time from March 28, 2011, the amended alleged onset date, through the date of this decision, Mr. Richardson has had the following impairments, but that none of them are severe because none of them have caused more than minimal impact on Mr. Richardson's abilities to engage in work-related activities for any period of 12 consecutive months: Torn meniscus in both knees for at least 10 years… Hearing loss… Viral enteritis… Depression. Anxiety… Alcohol dependence….

4.  From March 28, 2011, the amended alleged onset date, through the date of this decision, Mr. Richardson did not and does not have an impairment or combination of impairments that met, meets, medically equaled, or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I finds [sic] that, from March 28, 2011, the amended alleged onset date, through the date of this decision, Mr. Richardson had and has the residual functional capacity to work subject to the following limitations on his ability to work:

> Mr. Richardson could and can do work at the sedentary exertional level only, with all that implies with respect to exertional and postural limitations (see 20 C.F.R. 404.1567 for further details about what those are) subject to the following additional limitations. Mr. Richardson could not and cannot climb ladders, ropes, or scaffolds.  Mr. Richardson could not and cannot turn his head to the left or right more than 45 degrees.  Mr. Richardson could and can push and pull with his upper extremities up to and no more than occasionally.  Mr. Richardson could not and cannot perform work in an environment where there is exposure to fumes, chemicals, dust, or agricultural or landscaping pollens in concentrations that exceed what would be in the environment outside of or away from the workplace.  Mr. Richardson could not and cannot perform work in an environment where there is exposure to extremes of heat, cold, humidity, or dryness.  Mr. Richardson could not and cannot work in proximity to unprotected heights, dangerous moving machinery, or other workplace hazards.  Mr. Richardson could not and cannot operate a motor vehicle as part of a job.

6.  From March 28, 2011, the amended alleged onset date, through the date of this decision, Mr. Richardson was and is capable of performing past relevant work as a safety area manager, both as that work is usually done in the national economy and as Mr. Richardson actually did it.  This work does not require the performance of work-related activities precluded by

9

Mr. Richardson's residual functional capacity (20 CFR 404.1565).

7.      Mr. Richardson has not been under a disability, as defined in the Social Security Act, from March 28, 2011, the amended alleged onset date, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 18-35).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).   Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

### 1. Consultative Examining Physician's Opinion

In the first assignment of error, Plaintiff challenges the ALJ's decision to ascribe no weight to the opinion of Dr. Bradford, a non-treating physician who performed a one-time consultative examination. (R. 12, PageID# 585-588).   Plaintiff contends that the ALJ's opinion did not employ "proper legal standards" or "provide a meaningful explanation." (*Id*.)   Conversely, the Commissioner argues that the ALJ's decision considered Dr. Bradford's opinion and provided a thorough explanation for the weight it was ascribed.

Typically, more weight is given to the opinion of an examining versus non-examining source. *See* 20 C.F.R. §§ 404.1527(c)(1).   With respect to State Agency physicians, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but because said consultants are "highly qualified physicians, psychologists, and other medical specialists" an ALJ should consider their findings. *See* 20 C.F.R. § 404.1527(e)(2).   When considering these opinions, ALJs should look to factors such as the nature of the relationship (*i.e.* examining or non-examining or the frequency of examination), supportability, consistency, and other factors. 20 C.F.R. §§ 404.1527(e).   Furthermore, the regulations mandate that "[u]nless the treating [physician's] opinion is given controlling weight, the [ALJ] must ***explain*** in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 404.1527(e)(2(ii) (emphasis added).

An ALJ, when arriving at the RFC assessment, "must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the

adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *see also Puckett v. Colvin*, 2014 WL 1584166 at *9 (N.D. Ohio April 21, 2014) (Vecchiarelli, M.J.) (explaining that, although the ALJ was *not* required to evaluate opinions of consultative examiners with the same standard of deference as would apply to an opinion of a treating source, he was required to "acknowledge that [the examiners'] opinions contradicted his RFC finding and explain why he did not include their limitations in his determination of Plaintiff's RFC").

The ALJ's decision referenced Dr. Bradford's opinion, contained in Exhibit 2F (Tr. 347-355), in several different sections of the opinion.   Those sections are quoted below:

> In July 2012,[6] Mr. Richardson underwent a consultative physical evaluation for disability purposes.   His complaints included low back pain and numbness in the left leg associated with a reported birth defect.   Yet he denied use of ambulatory aids. Gait and station remained normal.   He also reported radicular neck pain with limitations on bending his head.   On inspection, Mr. Richardson demonstrated restricted head and neck range of motion, but there was normal stability, strength and tone.   There were similar findings on inspection of the spine, pelvis and ribs (Ex. 2F/8).   Upper extremities were normal and without tenderness.   There was full range of motion and normal stability on the right lower extremity.   The left lower extremity showed reduced hip range of motion, but normal strength and tone. A diagnosis included "probable" spondylolisthesis, which the consultative examination did not support (Ex. 2F/9).

> ***

> In June 2012, a consultative examiner conducted a physical examination of Mr. Richardson for disability purposes.   There was evidence of increased respiratory rate and effort upon inspection.   However, Mr. Richardson demonstrated normal chest palpation and auscultation.   Despite his increased respiratory rate and effort, his heart rate and rhythm were normal without evidence of murmurs, gallops, or abnormal heart sounds.   There were normal carotid arterial pulses and no extremity edema noted.   There was no palpable enlargement or bruit of the abdominal aorta.   There was normal pedal pulses and capillary refill.   There was no chest wall tenderness.   The consultative examiners findings did not support at

---

[6] The indication that the examination occurred in July rather than June appears to be a typographical error.

diagnosis for COPD (Ex. 2F/8/9).

\*\*\*

Physical examinations suggest that Mr. Richardson is capable of work activity consistent with the residual functional capacity. The generally unremarkable medical evidence supports the residual capacity, Mr. Richardson's activities of daily living, and opinions noted below. Although Mr. Richardson does have established degenerative findings in the cervical, thoracic, and lumbar spine, records indicated that they are moderate in severity (Ex. 5F/11; 6F/3; l0F/2/3; 2-F/2). His gait was often within normal limits (Ex. l F/15; 2F/6/8/9; l0F/3)…. Regarding his breathing issues associated with obstructive ventilatory disease, the record does not demonstrate he has chronic breathing attacks in spite of prescribed treatment or physician intervention. Further, pulmonary function studies showed only moderate findings. Respiratory examination generally showed normal respiratory response rate and no respiratory distress (Ex. 2F/8/9; 5F/1/5). I accounted for this condition by limiting his work environment with environmental exposure to fumes, dusts, and other contaminants as set forth in the residual functional capacity assessment.

\*\*\*

I considered the opinions of the State agency Dorothy A. Bradford, M.D., who did a consultative physical examination of Mr. Richardson for the State agency on June 11, 2012 (Ex. 2F). In addition to what I said above about her opinions, I add here the following. I gave no weight to her perform [sic] that Mr. Richardson was unable to perform sedentary work because that opinion was [not][7] supported by her own objective findings, by the weight of the evidence considered as a whole, or by Mr. Richardson's hearing testimony. In addition, except for what she specifically stated that she found on physical examination of Mr. Richardson, her opinions were based on Mr. Richardson's allegations to her.

(Tr. 26, 28, 30, 32).

While the discussion of Dr. Bradford's opinion is poorly worded, it is clear that the ALJ

believed that Dr. Bradford's opinion—that Plaintiff was unable to perform sedentary work—was

*not* supported by her own objective findings, by the weight of the evidence considered as a whole,

---

[7] Read in context, the Court finds that a typographical error, or more accurately an omission, occurred at this portion of the decision. The ALJ plainly intended to state that he was not ascribing any weight to Dr. Bradford's opinion that Plaintiff was unable to perform sedentary work, because Dr. Bradford's own findings did **not** support such a determination.

13

or by Plaintiff's hearing testimony.   The ALJ did not ignore the opinion of Dr. Bradford, as he considered her opinion and the results of her consultative examination throughout the decision. Furthermore, the ALJ plainly stated the weight he was ascribing to her opinion, and explained the reasons why he ascribed her opinion "no weight" as it pertained to Plaintiff's ability to perform sedentary work.   The *explanation* requirement applicable to non-treating sources, such as Dr. Bradford, should not be confused with or construed as rigorously as the standard applicable under treating physician rule. *See, e.g., Jefferson v. Colvin*, 2015 WL 4459928 at *6 (N.D. Ohio 2015) (White, M.J.).

   With respect to Dr. Bradford's opinion that Plaintiff could not perform sedentary work, the ALJ indicated that Plaintiff's gait was often within normal limits and that the record did not demonstrate Plaintiff suffered from chronic breathing attacks. (Tr. 30).   While Plaintiff points out that he had a pulmonary function study demonstrating moderate obstructive ventilator defect from July 25, 2012 (R. 12, PageID# 587, *citing* Tr. 389), it is not this Court's function to reweigh the evidence and make *de novo* factual determinations.   Furthermore, the ALJ indicated "[r]egarding Mr. Richardson's obstructive ventilatory disease, Mr. Richardson alleges breathing issues restricts [sic] his ability to walk, stand or climb stairs.   However, Mr. Richardson's medical records and history of medication reflect that his obstructive ventilator disease is not so severe that it precludes the limited range of sedentary work outlined above." [8] (Tr. 27-28).   The decision generally notes the presence of several other medical source opinions that found Plaintiff could perform at least sedentary work.   For example, the ME opined that Plaintiff could perform a work at a level higher

---

[8]  The ALJ also stated, "Mr. Richardson's obstructive ventilatory disease did not and does not meet the criteria in Listing 3.02. There is no evidence that demonstrates Mr. Richardson suffers from chronic obstructive pulmonary disease with Forced Expiratory Volume in one second (FEV1) equal to or less than the values specified in table I of the listing corresponding to Mr. Richardson's height without shoes." (Tr. 23).

than sedentary—a reduced range of light work. (Tr. 33, 69).   Although counsel specifically drew the ME's attention to the aforementioned pulmonary function study, the ME did not rescind or modify his testimony that Plaintiff could perform more than sedentary work.[9] (Tr. 72).   In addition, the ALJ ascribed great weight to the physical assessment of Mark A. Lipton, M.D., who found Plaintiff could sit for six hours in an eight-hour workday, while discrediting some of his other findings.[10] (Tr. 31, 503-506).   An ALJ could certainly credit the opinion of a treating source as to Plaintiff's ability to sit over that of an examining source.   An ALJ would also be placed in an untenable position if he or she could not analyze and assess different weight to the opinions of various non-treating or examining sources who did not give consistent opinions with one another. As such, it is not surprising that other courts have determined that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *Williams v. Colvin*, 2015 WL 5165458 at *5 (N.D. Ohio, Sept. 2, 2015) (*citing Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006); *accord Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433 at *8 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source"). While a claimant may disagree with the ALJ's explanation as to why little weight was assigned to a nontreating medical source, such a disagreement with the ALJ's rationale does not provide a basis for remand. See, e.g., *Steed v. Colvin*, 2016 WL 4479485 (N.D. Ohio Aug. 25, 2016) (McHargh, M.J.).

---

[9]  The ALJ ultimately rejected the ME's opinion that Plaintiff could perform a reduced range of light work, but only because the ALJ found that the medical record was more consistent with sedentary work. (Tr. 33).   He otherwise "gave weight" to the ME's opinions. (*Id.*)

[10]  According to his functionality assessment, Dr. Lipton had treated Plaintiff for thirty years. (Tr. 506). Plaintiff has not challenged the ALJ's assessment of Dr. Lipton's opinions.

Plaintiff's argument—that other evidence of record should have persuaded the ALJ to ascribe greater weight to Dr. Bradford's opinion concerning the Plaintiff's RFC—essentially invites the Court to find that the explanation given by the ALJ for rejecting the opinion of a nontreating source did not contain sufficiently "good reasons," in essence mirroring the requirements of the treating physician rule.   This Court, however, declines to apply the rigors of the treating physician rule to the opinion of a nontreating consultative examiner. *See Wright v. Colvin*, 2016 WL 5661595 at *10 (N.D. Ohio Sept. 30, 2016) (McHargh, M.J.) (declining to "judicially expand the treating physician rule to non-treating sources").

For the foregoing reasons, the first assignment of error is without merit.

**2. Past Relevant Work as an Area Manager**

In the second assignment of error, Plaintiff asserts that the ALJ's finding—that Plaintiff can perform his past relevant work as an area manager—is not supported by substantial evidence. (R. 12, PageID# 588-590).   Specifically, Plaintiff argues that the VE's testimony was insufficient, because the VE was not present during that portion of the hearing where the Plaintiff recounted his job duties as an area manager.[11] (*Id.*)   As this Court understands Plaintiff's argument, Plaintiff contends that his past work as an area manager exposed him to a number environmental irritants, which the VE did not have an opportunity to hear.   Therefore, Plaintiff argues that it is unclear whether the VE's testimony was accurate given the extensive environmental restrictions contained in the RFC finding. (*Id.*)

Pursuant to 20 C.F.R. § 404.1520(f), a claimant's impairments must prevent him "from doing [his] past relevant work.   If we cannot make a determination or decision at the first three steps of

---

[11]  The VE was testifying by telephone and was also assisting another ALJ. (Tr. 44, 75-79).   Plaintiff's contention—that the VE was not on the line during Plaintiff's testimony—appears to be accurate.

the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work....   If you can still do this kind of work, we will find that you are not disabled." Here, it was Plaintiff's burden to show he could not perform his past relevant work as "[t]he initial burden of proof in this matter rests with the claimant to show that he cannot perform his past relevant work." *Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 569 (6th Cir. 1989); *accord Parker v. Sec'y of Health and Human Servs.*, 1991 WL 100547 at *1 (6th Cir. Jun. 11, 1991).

Social Security Ruling No. 82-61, 1982 WL 31387 (1982) clarified the Social Security Administration's policy "in determining whether a claimant can perform his or her past relevant work, *i.e.*, whether the claimant retains the residual functional capacity (RFC) to perform the physical and mental demands of the kind of work he or she has done in the past."   Further, SSR 82-61 identified three possible tests for determining whether a claimant retains the ability to perform past relevant work: (1) "[w]hether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job," (2) "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it," or (3) "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job *as ordinarily required by employers throughout the national economy*."[12] *Id.* (emphasis added).

It is Plaintiff's contention that the ALJ's finding—that he can perform past relevant work—is

---

[12]  SSR 82-61, 1982 WL 31387 explicitly states that "The Dictionary of Occupational Titles (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy." (emphasis in original).

17

not supported by substantial evidence, because the VE did not hear Plaintiff's testimony regarding the environment in which he performed the job of an area manager.   Plaintiff's argument fails for a number of reasons.   First, Plaintiff fails to identify any testimony indicating that his work entailed exposure to environmental conditions prohibited by the RFC.   The brief only mentions that Plaintiff had to work in a plant where there is steel grit.[13] (R. 12, PageID# 598).   Without more, Plaintiff has failed to show the Court that his prior work as an area manager, as he actually performed it, involved exposure to prohibited environmental irritants or dangers.

Furthermore, assuming *arguendo* that Plaintiff could not perform his past relevant work as he actually performed it, such a finding would not necessitate a remand.   The ALJ expressly found that Plaintiff was capable of performing his past relevant work "both as that work is usually done in the national economy and as Mr. Richardson actually did it." (Tr. 33).   The VE's testimony was sufficient to establish that Plaintiff retained the capacity to perform the functional demands of the area manager position as ordinarily required by employers throughout the national economy. *See, e.g., Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002) (finding it immaterial if claimant could not perform past relevant work as she actually performed it in the past, as the ALJ also found claimant was capable of performing her past relevant work as that work is generally performed in the economy); *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995) (treating Step Four as a two-step inquiry where an ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant, and, if not, then proceeding to determine whether the claimant can

---

[13]   Plaintiff's hearing testimony merely states that there were 50-pound bags of sand and 100-pound bags of steel grit in the factory. (Tr. 59).   The ALJ advised the VE that Plaintiff's work environment included bags of sand and steel grit, along with a description of Plaintiff's past relevant work. (Tr. 77-78).   The VE considered this information in response to the ALJ's hypothetical questions addressed *supra.*

perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy).

If a VE testifies in response to a hypothetical question that precisely sets forth all of the claimant's impairments, his response constitutes substantial evidence for a finding of either disability or nondisability. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1988).   Here, there is no indication the hypothetical was inaccurate.   The position in question— that of an area manager—is designated as a "Manager, Branch" by the DICOT. *See* DICOT 183.117-010.   The job of an "area manager," however, is included among the alternate titles used to describe the position.   Pursuant to the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCODICOT" 11.05.02) U.S. Dept. of Labor (1993), the manager, branch position, DICOT 183.117-010, does not generally involve the presence of any "environmental conditions" save for moderate noise. SCODICOT § 11.05.02 at p. 388.   Notably, noise was not a restriction included in the RFC.   Therefore, the VE's testimony that the Plaintiff could perform the job of an area manager is supported by substantial evidence, as that position does not typically involve exposure to environmental limitations of the kind prohibited by the RFC.   It is well accepted that if a claimant cannot perform past relevant work as he actually performed it, but "can perform the functional demands and job duties as generally required by employers throughout the economy, the [claimant] should be found 'not disabled.'" *DeMoss v. Sec'y of Health & Human Servs.*, 1988 WL 42006 at *5 (6th Cir. May 5, 1988) (*citing* SSR 82–61*); see also, Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987).

Finally, Plaintiff's argument concerning the transferability of skills and the discussion of the grid rules—found in 20 C.F.R. Pt. 404, Subpt. P, App. 2—is not altogether clear. (R. 12, PageID#

590).   As discussed *supra*, the ALJ made a proper finding at Step Four that Plaintiff could perform his past relevant work.   As such, the grid rules and the transferability of skills are irrelevant. *See Shields v. Chater*, 77 F.3d 493 (10th Cir. 1996) (finding claimant's argument concerning the use of the grids "legally frivolous" noting that "[l]egally, the grids are irrelevant at step four, because they relate to vocational factors that the Secretary does not consider until step five."); *Bennett v. Colvin*, 2015 WL 5693602 at *6 (N.D. Ala. Sept. 29, 2015) ("the Grids are irrelevant because the ALJ properly found Bennett could perform her past relevant work at Step Four"); *Justice v. Astrue*, 2011 WL 1087937, at *21 (S.D. W.Va. Mar. 23, 2011) ("Plaintiff's argument that the ALJ misapplied the Grids is without merit because the ALJ did not decide this case using the Grids at step five; rather, he found that Plaintiff could perform her past relevant work at step four."); *accord Norman v. Colvin*, 2016 U.S. Dist. LEXIS 31681 (N.D. Ohio Jan. 4, 2016) (White, M.J.), adopted by 2016 WL 922741 (Mar. 3, 2011) (Lioi, J).

The second assignment of error is without merit.

## IV.   Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: March 3, 2017

20

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.   Failure to file objections within the specified time may waive the right to appeal the District Court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).